OPINION
Defendant-appellant Crystal Lake appeals her conviction and the sentence imposed by Ashland Municipal Court on August 27, 1998, for assault in violation of R.C. 2903.13. Plaintiff-appellee is the State of Ohio.
STATEMENT OF THE FACTS AND CASE
On or about July 9, 1998, appellant was charged with assault in violation of R.C. 2903.13 and criminal trespass in violation of R.C. 2911.21(A)(C). At her arraignment on July 21, 1998, appellant entered a plea of not guilty to the above charges. A bench trial before Judge Howard W. Glick was held on August 27, 1998. The following evidence was adduced at trial. On July 9, 1998, Jody Martin, the victim in this case, was working the second shift at her press at Atlas Bolt Screw. Martin testified that at approximately 6:30 P.M., Crystal Lake, a former employee of Atlas Bolt Screw who previously had been told by the plant foreman to stay off of the premises, approached Martin from behind. According to Martin, appellant then grabbed Martin's braid, punched her in the right eye three times, and threw her on the cement floor, causing Martin to dislocate her shoulder. After the assault, appellant called Martin a bitch and threatened to kill her. Previously, on April 23, 1998, before resigning from her position with Atlas, appellant had had a confrontation with Martin. Appellant testified that, on such date, Martin, while training her on the press, became upset with appellant and threw a die at her, striking appellant's leg. Debra Walsh, an Atlas employee, testified that on July 9, 1998, she saw appellant standing close to Martin, who was lying on the floor. Walsh, however, neither saw appellant strike Martin nor pull her hair. Walsh then proceeded to tell Ronald Fugitt, a department supervisor, that appellant was on the premises. Fugitt, testified that immediately after the assault Martin "was excited, agitated, [and] nervous" and that her whole facial area was red. Transcript of Proceedings at 32. Fugitt, however, never saw appellant on the premises on July 9, 1998. After appellee rested its case, appellant's live-in boyfriend, Ronald (also known as Tony) Kirk, was called to the stand. Kirk testified that on July 9, 1998, he traveled to Pittsburgh with appellant to see a Grateful Dead concert that began at 8:00 P.M. The two had arranged to meet Kirk's friends, Dave and Desiree, in Pittsburgh at a Red Roof Inn to obtain the concert tickets. Kirk further testified that at approximately 4:00 p.m. Barb Butler, a mutual friend, took him and appellant to rent a car for the purpose of driving to Pittsburgh. A rental receipt from Koontz Rent-A-Wreck in Mansfield was introduced into evidence showing that Kirk had signed for a car on July 9, 1998, and returned the car two days later. According to Kirk, the two had left the car rental agency shortly after 5:00 p.m. to travel to Pittsburgh. Kirk also testified about a receipt for a motel that he stated he and appellant had checked into on July 10, 1998, at approximately 1:00 A.M., after the concert. The receipt was introduced into evidence. However, at trial, two of the State's witnesses, Gilbert Goodwill and Debra Walsh, testified that Kirk was on the premises of Atlas Bolt Screw on the evening of July 9, 1998. Appellant's account of the events of July 9, 1998, paralleled Kirk's. After considering all of the evidence presented, including the two exhibits, the court, on August 27, 1998, found appellant guilty of assault but not guilty as to the trespassing charge. Thereafter, pursuant to a Judgment Order filed on August 27, 1998, appellant was sentenced to 30 days in jail and ordered to pay costs and restitution for Martin's medical care. The court then proceeded to suspend 20 days of appellant's sentence and place her on probation for one year. It is from her conviction and sentence that appellant prosecutes her appeal, raising the following assignment of error:
THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 I
Appellant, in her sole assignment of error, argues that she was denied the effective assistance of counsel. Appellant specifically contends that trial counsel's failure to call witnesses to corroborate her testimony and establish her alibi was a serious flaw that prejudiced the outcome of the trial. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S. Ct. 838, 122 L. Ed 2d 180; Strickland v. Washington (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. It is with this framework in mind that we address the instances of alleged ineffectiveness of counsel raised by appellant in the instant case. An attorney's failure to subpoena witnesses is within the realm of trial tactics and does not, absent a showing of prejudice, constitute ineffective assistance of counsel. State v. Hunt (1984), 20 Ohio App.3d 310, citing State v. Hester (1976), 45 Ohio St.2d 71. Appellant contends that her attorney's failure to subpoena witnesses was prejudicial since such testimony was material and "would have directly affected the outcome of the trial." Appellant specifically points to trial counsel's failure to call Barb Butler, who allegedly could place appellant at Koontz Rent-A-Wreck on July 9, 1998, Koontz Rent-A-Wreck employees, who allegedly would testify as to appellant being present and as to when appellant left and returned in the rented vehicle, and Desiree and Dave, who allegedly could testify as to appellant's presence in Pittsburgh. However, other than appellant's assertions, there is no evidence as to how such witnesses would have testified if subpoenaed. Assuming, arguendo, that appellant has met the first prong of the test set forth in Strickland, this court finds that appellant has not shown that there is a reasonable probability that, but for trial counsel's ineffectiveness, the result of the trial would have been different. Strickland, supra. The trial court, as trier of fact, considered the two exhibits presented by appellant as well as the testimony of Kirk and of the appellant herself. The trial court, therefore, had the opportunity to evaluate both Kirk's and appellant's credibility and that of the defense exhibits. Moreover, in addition to the victim's testimony placing appellant on the premises on July 9, 1998, two rebuttal witnesses called by the State, one who did not know appellant, indicated that both appellant and Kirk were observed on the premises of Atlas Bolt 
Screw on the night of the assault. While one of the witnesses was friends with the victim, such witness stated unequivocally that she would not lie for her. After considering all of the evidence, including the testimony and the exhibits, the trial court found that the State had fulfilled its burden of proof beyond a reasonable doubt and found appellant guilty of assault. In so holding, the trial court stated as follows: "The Court does believe that Tony Kirk checked in on the morning of the 10th, which places it after midnight on the night and that for whatever reason this document [the motel receipt] is unclear. Nevertheless, the Court also does believe that — I'm not really quite sure whether that even provides an alibi for Mr. Kirk for the following reasons: The Exhibit A indicates he checked out a vehicle on the day of the 9th at sometime before 6:00 p.m., and I say 6:00 p.m. instead of 5:00 p.m. because the invoice lists that the Rent-A-Wreck is open until 6:00 p.m. on weekdays. At sometime before 6 p.m., he checked out a vehicle. At sometime after midnight the same day, he checked into the Fairfield Suites in Pittsburgh. If Mr. Kirk had been accused of this crime, I'm not so sure whether this would actually provide an alibi because certainly the crime could be committed at — and I think there's no argument about when the crime was committed as — the only issue is to who committed it. The crime could have been committed in plenty of time to go and do whatever you needed to do in the Pittsburgh area. The Court will take judicial notice that the trip to Pittsburgh was roughly two and a half to three and a half hours, depending upon who's driving. The issue then comes to the identification of the assailant of Jody Martin. It's the Court's opinion that Jody was assaulted, that she did not trip as suggested by the Counsel. Jody Martin's testimony is that she directly identified her assailant, that the assailant was known to her, that words were exchanged. Ron Fugitt identified Miss Martin as being agitated and excited in her description of what had happened. Debra Walsh identified Miss, the defendant, Miss Lake, as having been on the premises, and I think it is somewhat significant that she testified that she was merely going to report that she had been on the premises, knowing, at least in her mind, that she was not supposed to be there. She admitted that she did not see the assault itself. I do not look at the dispute between these woman as being an ongoing dispute. There's been no testimony today that anything happened between April 23rd and July 9th between these women that would lead to the fabrication by Jody Martin of Crystal Lake as her assailant." Transcript of Proceedings at 117-119.
The trial court clearly did not find either Kirk's or appellant's testimony credible. Based on the foregoing, even if trial counsel had called additional witnesses to support appellant's alibi, there is not a reasonable probability that the outcome of the trial would have been different. Appellant, therefore, was not prejudiced by any alleged ineffectiveness. Appellant's sole assignment of error is overruled.
The judgment of the Ashland County Municipal Court is hereby affirmed.
By Edwards, J. Wise, P. J. and Reader, V. J. Concur